UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


NELSON ZANE WESTMORELAND                               CIVIL ACTION

v.                                                     NO. 17-6220

VENICE MARINE AND                                      SECTION "F"
OUTDOOR CONSULTANTS, INC., ET AL.

ORDER AND REASONS

Before the Court is Blake Rigby's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This case arises from a broken ankle suffered by the plaintiff when he jumped off the bow of a boat onto a slick dock four feet below at the conclusion of an overnight recreational fishing trip.

Captain Blake Rigby is a charter boat captain, operating charters and leisure fishing trips from the Venice Marina into the Gulf of Mexico eight to ten times each month using a 38-foot Fountain boat with outboard engines. His charter company is called Triple Tail Charters, but it is not a formally formed entity and it does not own any boats. In the summer of 2016, the boat Rigby

1

used, the 38-foot Fountain boat, was solely owned by Allen Reynolds.[1]

In July 2016, Robert Andrew Ray planned an overnight fishing trip for a few friends and co-workers. He hired and paid Captain Rigby to take him and the group fishing offshore in Louisiana.[2] There is some debate concerning whether the trip was a charter or a leisure fishing excursion with friends of the boat owner, Allen Reynolds.

On July 22, 2016, the group of co-workers and friends, including Michael Dean Vicars, Paul Stiles, John David Anthony, Robert Andrew Ray, and Nelson Zane Westmoreland, drove from Houston to Venice for the overnight offshore fishing trip. Once they arrived in Venice, they unloaded their bags at a house they had rented and then went to the marina. The group brought sandwiches and beverages, including beer, onboard with them; fishing gear was provided for them. The group's plan was to stay out all night fishing and return to the marina in the morning. They arrived at the marina in Venice at around 4:00 p.m. and left the dock at 4:30

---

[1] At some point after July 23, 2016, Rigby had an ownership interest in the boat along with Reynolds.
[2] Ray had chartered the boat four or six times with Rigby as the captain. Ray testified that he gets a good deal: "I pretty much want to cover the cost of fuel plus pay for Blake's time. I know it's much cheaper than what you see online, for what we get."

p.m. Captain Rigby pulled the boat up to the dock and the passengers climbed aboard at the bow.

Captain Rigby navigated the boat approximately 80 miles from the marina and around to different platforms so that the group could fish for tuna. There were intermittent rain showers while they fished offshore. The group took turns fishing and sleeping throughout the night. Around 12:30 a.m., Stiles told Westmoreland that it was probably time to stop drinking beer. Westmoreland was a little drunk at that time, but he stopped drinking, sat down, and ate a sandwich.

When they returned to the Venice Marina at around 6:30 a.m. the next morning, Captain Rigby positioned the boat, bow first, as is customary at Venice Marina. Dock workers tied off the boat. According to Captain Rigby, the usual and customary manner of exiting vessels onto the dock at Venice Marina is by climbing down from the bow of the boat onto the dock. This was also true of the fishing trip patrons, who exited the boat from the bow, just as they had entered. There was a 3½ to 4 foot drop between the bow of the vessel and the floor of the dock, which was roughly the same when they had boarded the boat the day before. Captain Rigby gave no instructions on how to disembark, and no one asked Rigby to provide an alternative means of egress from the bow of the boat.

The Venice Marina dock was wet that morning. There was a lot of traffic and activity, including boats leaving, boats arriving, people pulling fish towards a cleaning station, and a man hosing down the dock. Vicars, Ray, and Anthony were in a rush to disembark because they wanted to get to the restroom. Vicars and Anthony went to the front of the bow and jumped down to the dock, and Ray recalls either sitting down and sliding off the boat at the bow, or lowering his hands and dropping his feet to the dock. Stiles also went to the front of the bow to exit, but he does not remember if he jumped down or sat down first and then scooted down to the dock. None of them fell or injured themselves. Westmoreland was the last patron to disembark. Westmoreland squatted down or sat at the edge of the boat and then jumped to the dock below. Upon contact with the dock, his feet came out from under him, causing him to severely fracture his right ankle. While laying on the dock, Westmoreland noticed that the dock was wet and that he was covered with fish slime and algae.

On June 27, 2017, Nelson Zane Westmoreland sued Blake Rigby, Triple Tail Charters, and Deep Delta Houseboats, L.L.C., d/b/a Venice Marina,³ alleging that Rigby's negligence in failing to

---

³ The plaintiff initially named as a defendant Venice Marine and Outdoor Consulting, but he dismissed this party and named Deep Delta Houseboats in an amended complaint.

provide a safe means of egress and the marina's unsafe condition caused his severe ankle surgery. He seeks to recovery under general maritime and Louisiana law. Rigby now seeks summary relief dismissing the plaintiff's claims against him.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

Captain Rigby contends that he is entitled to judgment as a matter of law given that (i) the usual and customary manner of mooring outboard engine boats at the Venice Marina was bow in; (ii) the practice of climbing down from the bow onto the dock was the usual and customary manner of egress; (iii) there is no evidence that Westmoreland was denied an alternative means of egress; (iii) Captain Rigby did now own the vessel at the time and therefore owed the plaintiff no duty, or breached no duty. The plaintiff counters that as an owner "and captain of the charter vessel," Captain Rigby owed him a duty "to insure safe passage from the boat to the dock." On this record, the Court disagrees.

"It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (1959)(citations omitted)(holding that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case").[4] A duty

---

[4] For the purposes of summary judgment, both parties appear to agree that maritime law applies to the plaintiff's negligence claim against Captain Rigby.

of care exists when an injury is foreseeable or when contractual or other relations of the parties impose it. Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980).

The summary judgment record discloses that Captain Rigby had no ownership interest in the boat he navigated for Westmoreland and the group in July 2016. Westmoreland offers no countervailing evidence to raise even a genuine dispute as to this material fact. Therefore, Captain Rigby did not owe the duty of a vessel owner to a passenger at the time of Westmoreland's injury. This alone suggests that the plaintiff cannot prove an essential element of his claim against Captain Rigby.

At best, there is a genuine dispute as to whether the overnight fishing trip was a chartered voyage, or simply a fishing excursion with friends of the boat owner. However, even if there was a formal or de facto charter party governing the arrangement, the plaintiff fails to offer any case literature to support a finding that Captain Rigby owed a duty to Westmoreland or the other recreational fishermen to ensure that they safely disembarked the boat.

Continuing to operate on the mistaken assumption that Captain Rigby owned the boat at the time of the fishing excursion, Westmoreland invokes Hebert v. Specialized Envtl. Res. LLC, No.

12-71, 2013 WL 1215443, at *1 (E.D. La. Mar. 25, 2013). There, this Court granted summary judgment in favor of a time charterer, but found that fact issues precluded summary judgment as to the vessel owner's negligence. This Court noted that "a time charter is not generally liable for claims of negligence of the crew or for the unseaworthiness of the vessel; however, a time charterer may be liable for its own negligence in its capacity as time charterer." Id. (citing Forrester v. Ocean Marine Indem. Co., 11 F.3d 1213, 1215 (5th Cir. 1993)). The Court reiterated the six principles regarding a time charterer's liability.[5] Notably, a

---

[5]   First, . . .a time charterer may be held liable regardless of whether the vessel owes a primary duty or a high standard of care to the injured plaintiff. Second, a time charterer owes a . . . hybrid duty arising from contract and tort, to persons with whom it has no contractual relationship, including vessel passengers, to avoid negligent actions within the sphere of activity over which it exercises at least partial control. [Precedent] establish[es] that the traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment. Third, . . .the parties may vary the traditional assignment of control by contract or custom. Fourth, . . .unless the parties have so varied the traditional allocation of responsibility, a time charterer owes no duty beyond these spheres. Fifth, . . .*a time charterer's traditional sphere of control does not extend to providing a safe means of ingress and egress from the vessel*, absent special circumstances. Sixth, . . .the fact that a vessel owes a duty to a passenger to provide

time charterer can be liable for an accident that occurs during ingress or egress, but only if the accident resulted from a decision within the time charterer's control spheres or if the time charterer and vessel owner altered the traditional allocation of responsibility by custom or contract:

> [T]he fact that a vessel owes a duty to a passenger to provide a safe means of ingress and egress does not mean that an accident arising from this activity cannot also be the fault of the time charterer, ***if the plaintiff can establish that accident resulted in part from a decision,*** such as the timing of the ingress or egress, ***within the time charterer's control spheres.***

Hogden, 87 F.3d at 1520 (emphasis added). In dismissing the plaintiff's claims against the time charterer, this Court observed:

> Again, plaintiff appears to assert that because ES&H knew passengers boarded from the rear, and failed to instruct the passengers not to do so, ES&H altered the traditional allocation of responsibility. The case literature, however, clearly establishes that unless altered by custom or contract, the duty to provide a safe means of ingress and egress lies with the vessel

---

a safe means of ingress and egress does not mean that an accident arising from this activity cannot also be the fault of the time charterer, if the plaintiff can establish that accident resulted in part from a decision, such as the timing of the ingress or egress, within the time charterer's control spheres.

Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1520 (5th Cir. 1996) (emphasis added), superseded on other grounds by statute, Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2), as recognized in Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778 (5th Cir. 2009) (en banc).

> owner. See, e.g., Callahan v. Gulf Logistics, LLC, 456
> F. App'x 385 (5th Cir. Dec. 29, 2011) ("[A] time
> charterer's traditional sphere of control does not
> extend to providing a safe means of ingress or egress
> from the vessel."); Forrester, 11 F.3d at 1215 ("Having
> reaffirmed that a time charterer does not owe a per se
> duty of safe access to a passenger . . . ."). Here, the
> allocation of responsibility was not altered by the
> charter agreement between ES&H and Specialized
> Environmental because the charter does not contain a
> provision addressing ES&H and the issue of ingress and
> egress.

Hebert, 2013 WL 1215443, at *4.

Even if Hebert was analogous to the facts of this case, any similarities support Captain Rigby's motion for summary judgment, not the plaintiff's negligence claim. Here, again, there is no factual controversy concerning ownership of the fishing boat: at the relevant time, Allen Reynolds alone owned the boat.[6] There is no evidence that any formal charter party existed that clearly shifted the responsibility for negligence, or a duty to provide safe egress, from the boat's owner to Captain Rigby. Moreover, it is undisputed that Captain Rigby followed the custom of docking at Venice Marina, bow in, and the customary method for disembarking was from the bow. Indeed, each person on the fishing excursion

---

[6] Captain Rigby testified to this fact during his deposition and again in a consistent affidavit. According to the record, Rigby later acquired a part-ownership interest in the boat, but not until sometime after the excursion at the focus of this case. The plaintiff identifies no competent evidence that creates a factual controversy on this point.

boarded and exited the boat from the bow (which was roughly 3 ½ to 4 feet from the dock) with no assistance and no request for assistance.[7]

Because the plaintiff has failed to present evidence demonstrating that he would meet his burden of proof at trial on an essential element of his negligence claim against Captain Rigby, Captain Rigby is entitled to judgment as a matter of law, dismissing Westmoreland's claim against him. Accordingly, IT IS ORDERED that Rigby's motion for summary judgment is GRANTED; the plaintiff's claim against Rigby is hereby dismissed.[8]

New Orleans, Louisiana, May 2, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[7] The Court observes that the plaintiff offers no evidence to support a finding that this method of egress under the circumstances of a four foot drop was unreasonably dangerous. Nor does the plaintiff challenge the admissibility of the expert report relied upon by Captain Rigby.

[8] Neither Triple Tail Charters nor Deep Delta Houseboats, L.L.C. has moved for summary judgment.